NINA W. CARLTON, *et al., v.* E. A. ROWAN.

[60 South. 735.]

PUBLIC LANDS.  *Levee lands.  Deeds.  Priority.*

> Where liquidating levee commissioners who were also commissioners of the Chancery Court, executed two deeds at different times to two separate parties for the same land owned by the liquidating levee, board, and the last deed was first recorded without actual notice of the first deed, the grantee in the second deed in such case was a bona fide purchaser for value without notice and acquired a good title to the land, and it is immaterial whether the commissioners in making the deed acted as liquidating levee Commissioners or as Commissioners of the Chancery Court.

APPEAL from the chancery court of Quitman county.
HON. M. E. DENTON, Chancellor.

Suit by E. A. Rowan against Nina W. Carlton and others. From a decree for complainant awarding him a part of the land, both parties appealed.

The facts are sufficiently stated in the opinion of the court.

*J. W. Cutrer,* for appellant.

It is contended on behalf of the appellant, that the action of the court below in holding that the deed to the appellee executed by Gwin and Hemingway, commissioners, was not such a deed as was required to be recorded, was erroneous. The holding of the court upon that point as is seen by the contention of the appellant in brief on file, was and is based upon the decision of this court in the case of *Patterson* v. *Langston,* 69 Miss. 400.

It is submitted that the authority mentioned has no application to the action of commissioners of the chancery court, nor to deeds executed by commissioners of the chancery court. The statute upon that subject required that all conveyances in order to be operative against subsequent purchasers, must be acknowledged and lodged with the clerk of the chancery court of the county in which the lands are situated to be there recorded, and that all such conveyances shall in default of record be void as against subsequent purchasers. The statute is presumed to mean what it says.

The affairs of the old levee board had been taken out of the hands of any of the levee officers or state officers, and by decree of the chancery court of the first district of Hinds county, placed in the hands of receivers or commissioners of said court. The commissioners alone were authorized to make conveyances, and conveyances executed by such commissioners are to be governed by the law at the time of the execution of the deeds by them. That law was section 1209 of the Code of 1880. It must be presumed that the legislature meant what it said when it enacted the statute, and that unless the dispatch of the public business should require the engrafting upon it of particular exception, no exceptions whatsoever can be ingrafted upon it by the courts. Counsel representing the appellee very frankly admits that there is no authority for the position assumed, and asserted by the court, except it can be taken to be true that the situation

surrounding the grantors in the deed mentioned executed by them to the appellee, was and is such as to require the court to engraft an exception upon the statute by the very exigencies of the case. No such reason can be thought of, no exigency can be conceived which would require the court to make an exception in favor of the appellee. The reasoning and cause for the reasoning in the case of *Patterson* v. *Langston,* cannot be held to apply in the present case.

The facts are entirely dissimilar. If the court shall so hold, this point will make an end of the case in favor of appellee, and the cause should be determined finally by decree against the appellee and in favor of the appellant.

*P. H. Lowrey,* for appellee.

The answers of the defendants admitted title out of the government and the state and set up claims to the land by title derived through the M. & V. R. R. Co., under sale by Gwin and Hemmingway, in the case of *Joshua Green* v. *Gwin and Hemmingway,* —— Miss. ——, 51-53. The complainant claimed title directly from the same source by a deed executed by the same parties to him in August, 1881, prior to the conveyance to the railroad company. It was shown in the pleadings, and admitted, that the deed executed by Gwin and Hemmingway to E. A. Rowan was prior in date to the deed executed to the railroad company, but that it was not filed for record in Quitman county until after the purchase by the railroad company. This presents, in the very inception, the question as to whether or not this deed was subject to the recording acts. Gwin and Hemingway were state officers and were ex officio to liquidating levee commissioners and were acting only *pro hac vice* as commissioners of the chancery court in the famous case of Joshua Green. This point was raised on the demurrer and was decided in favor of the complainant in the overruling

of the demurrer. This court has held in *Patterson* v. *Langston*, 69 Miss. 400, that an auditor's deed is not subject to the recording acts and the same rule, for the same reasons would apply to the deed from the treasurer and auditor as ex officio levee commissioners, even though they were *pro hac vice* commissioners of the chancery court.

In addition to the deed from the levee commissioners, the complainant held and offered in evidence a deed from the state, dated May 23, 1898, and executed under an act of 1894, amended in 1896, to quiet titles to lands in the Yazoo-Delta, etc. Acts of 1896, p. 183; Acts of 1894, p. 76. The complainant's deed being shown at page 38 of the record. The defendants also claimed under deeds, which were exhibited in evidence, from the state to the railroad company, under the quieting acts of 1884 and 1888. The consolidation of the M. & V. and L. N. O. & T. with the Y. & M. V. R. R. Co. is admitted by the complainant and is shown by the record.

The complainant introduced in evidence deeds showing sales of these lands for liquidating levee taxes in 1872. The defendants offered in evidence certified parts of the list of lands sold to the state in 1872 for delinquent state and county taxes embracing the northeast quarter of the southwest quarter claimed by Mrs. Goshorn, but not covering that part of the lands claimed by Mrs. Carleton. They also offered in evidence certified lists of lands sold to the state for taxes in 1870 for delinquent state and county taxes, embracing the northeast quarter of the northeast quarter claimed by Mrs. Carleton.

The court held that the list of lands sold in 1870 was insufficient, as the law at that time required a deed, and the sale could not be proven in this way. The court also held that the sale of lands sold in 1872 could be established by the list, no deed then being required. The Code of 1871, having been adopted between the sale in 1870

and the sale in 1872, provided for passing of title to state in tax sales by the filing of the certified list.

This explains the finding of the court that the complainant acquired, under his conveyance, title to the northeast quarter of the northeast quarter but acquired no title to the northeast quarter of the southwest quarter. The defendants contended that although the complainants' deed from the levee commissioners was *prior* to that of the defendants, yet, that the title to the lands being in the state under the sales of 1870 and 1872, prior to the sale of this land to the levee board in May, 1872, that the complainant acquired no title through the levee commissioners and that they acquired the title through the sales under the acts of 1884 and 1888. On this question of law the courts seems to have agreed with the contention of the defendants.

The contention of the complainant was and is that whatever title was in the levee board was acquired by him under his purchase from Gwin and Hemingway in August, 1881, and that whatever title there was in the state was acquired by him in the conveyance from the state in 1898; and that the railroad company, having acquired nothing under its purchase from the levee board in October, 1881, could derive no benefit or title from conveyance from the state under the acts of 1884 and 1888. In other words, we contend that the complainant, having acquired the levee board's title prior to the conveyance to the railroad, that he alone was entitled to the benefit of the acts of 1884 and 1888 and 1896. That the railroad company had no more right to buy up the state's title under these acts of 1884 and 1888 than any other stranger to the levee board's title would have had. So far as I have been able to ascertain this identical question has not been presented in any other case to this court. Acts 1884, p. 182 and Acts 1888, p. 40.

The defendants also introduced a printed book, unbound, purporting to be a certified copy of the record

in the case of *Joshua Green* v. *Gibbs and Hemingway*. The complainant raised no point on the genuineness of the signature or seal of the clerk to this document, permitting it to go in as if the actual signature and seal were attached to the certificate appearing at the conclusion of the volume. It is agreed and appears in the record that the original book introduced in evidence may be used on the trial in this court, the copying of it in the record being waived. This volume shows a confirmation by the chancery court of a large amount of lands sold to the railroad company and to one Gordon but does not show the confirmation of any other sales. The certificate of the clerk made many years after the final disposition of the case is that what appears there is the record in this case as it then "remains" on file in his office. In view of this certificate, and the many things appearing in this alleged copy of the record, and the well-known fact, which I think amounts to common knowledge that this record had been much handled and much of it either lost or destroyed, and that much land was sold by these commissioners to other parties than Gordon and the railroad company, and that this copy, as presented, does not show the confirmation of any sales except these two; and the legislation of this state, particularly the preamble and the first section of the Acts of 1888, page 40, chapter 23, making the conveyances by Gwin and Hemingway *prima facie* evidence of the confirmation of the sale, I presume no serious contention will be made on this point in this court.

The court below correctly held that the certified list offered in evidence in proof of the sale of the northeast quarter of the northeast quarter to the state in 1870 was insufficient to pass title. This sale by the tax collector at this time could be proven only by the deed, at least until the absence of the deed was accounted for. Code 1857, p. 80, art. 36; *Weathersby* v. *Thoma,* 57 Miss. 296; *Dingey* v. *Paxton,* 60 Miss. 1049.

The court therefore correctly held that the title to this piece of land was in the complainant and cancelled the deed of the defendant, Mrs. Carleton, as a cloud upon complainant's title. The chancery court erred in holding that the title to the northeast quarter of the southwest quarter was in Mrs. Goshorn by virtue of the sales to the railroad company under the acts of 1884 and 1888. Our contention is that while the sale to the state in January, 1872, was prior to the sale to the levee board in May, 1872, that this state's title did not pass to the railroad company by the conveyances under the acts of 1884 and 1888 because the railroad company was not a ''purchaser'' from the levee board in contemplation of these two acts; because the commissioners, at the time the deed to the railroad was executed, had already sold this land to the complaint Rowan. These acts were clearly not intended for strangers to the levee board's title. I do not mean of course that the levee board must have actually had a good title in order to entitle the purchaser to the benefit of these acts, but no one could purchase under these acts except persons holding whatever right the levee board had. This court has held in *Owens* v. *Y. & M. V. R. R. Co.,* 74 Miss. 821, that the railroad company did not acquire the state's title where it had purchased from these commissioners' lands lying outside of the levee. In that case the railroad company had a deed from Gwin and Hemingway, as they have in this case, but because they take no right under that deed they could not acquire the state's title by complying with the terms of these quieting acts. Dr. Rowan did not purchase under these acts but in 1894 the legislature passed another similar acts which was amended in 1896, and Dr. Rowan took advantage of this act as shown by his deed from the state, in evidence, at page 38 of the record.

The defendants in the court below are in the inconsistent attitude of claiming title from Gwin and Hemingway, commissioners, as a common source, and yet denying

title in the common source. They may say that they do not claim title through Gwin and Hemingway, for the title was in the state and not in the levee board. In that case they could not acquire the state's title under the acts of 1884 and 1888 because only those claiming through Gwin and Hemingway were beneficiaries of those acts.

Dr. Rowan, having both the levee's board's title and the state's title to both of these pieces of land, should have had a decree confirming his title to both. I, therefore, respectfully submit that the decree of the chancery court upon the appeal of Mrs. Carleton should be affirmed.

Argued orally by *J. W. Cutrer,* for appellants and *P. H. Lowrey,* for appellees.

SMITH, C. J., delivered the opinion of the court.

Complainant filed his bill in the court below, praying that defendants' claim to the land in controversy be canceled as a cloud on his title. This land was formerly owned by the liquidating levee board, and all parties hereto claim under deeds executed thereto by Gwin and Hemingway, liquidating levee commissioners, and commissioners of the chancery court in the case of *Gibbs* v. *Green,* reported in 54 Miss. 592. Complainant's deed was executed on the 4th day of August, 1881, but was not recorded until the 13th day of February, 1884. The deed under which defendants claim was executed to their grantor on the 3d day of December, 1881, and recorded on the 13th day of the same month. When this last deed was executed, the grantee therein was without notice of complainant's previous purchase of the land.

It is wholly immaterial whether, in executing these deeds, Gwin and Hemingway were acting as commissioners of the chancery court or as liquidating levee commissioners, for in either event the deeds come within the operation of the statute relative to the recording of

deeds; consequently defendants' grantor must be held to have been a *bona fide* purchaser, without notice of complainant's interest in the land. It may be, as argued by counsel, that the reasons assigned by the court in *Patterson* v. *Langston,* 69 Miss. 402, 11 South. 932, holding that a deed executed by the auditor conveying land owned by the state does not come within the operation of this' statute, apply with equal force to the deeds here under consideration; but, be that as it may, we must decline to enlarge the exception which was ingrafted upon the statute by the decision in that case.

The court below granted to complainant the relief prayed for as to a portion of the land, decreeing against him as to the remainder thereof on grounds other than his failure to have his deed recorded. It should have dismissed the bill. It follows, from the foregoing views, that on the appeal of complainant, Rowan, the decree of the court below is affirmed, and on the appeal of defendant Nina W. Carlton it is reversed, and the bill dismissed.

*Reversed, and bill dismissed.*