SHIELDS *v.* STATE

No. 42239 October 1, 1962 144 So. 2d 786

*Wroten, Orlansky & Miller,* Greenville; *J. Wesley Miller,* Rolling Fork, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

RODGERS, J.

Henry Shields was indicated and tried for the murder of Inez Gibson in the Circuit Court of Sharkey County, Mississippi. The jury found defendant guilty of man-

slaughter and he was sentenced to serve a term of twenty years in the state penitentiary. Appellant has appealed from the judgment and sentence of the trial court, and asserts that the jury was misled by three instructions granted to the State.

The evidence introduced in the trial court, as shown by the record, may be briefly summarized as follows:

Henry Shields came home on the night of June 3, 1961, and as he was in the process of dressing for the night, he got into an argument with his wife. She bit his lip, and he seized a double barreled shotgun from a rack above the bed. Appellant and his wife, Lena Mae, began to struggle for possession of the gun. Catherine Kline, mother of Lena Mae, heard the children of appellant screaming and rushed to the scene. When she arrived, she promptly attempted to obtain possession of the shotgun, and failing in her objective, she called her husband, R. E. Kline. The stepfather, in response to the call of his wife, proceeded to the scene of the commotion, and upon his arrival, he attempted to obtain possession of the gun, either by persuasion or by actual physical force. At this point, the gun went off, the charge striking Lena Mae in the stomach, and from which wound she immediately died. Testimony for the State shows that appellant deliberately pointed the gun at his wife and shot and killed her. Testimony as to how appellant left the house is conflicting. Testimony for the State is to the effect that defendant followed R. E. Kline out of the door and shot him in the back on the steps. Testimony for defendant is to the effect that he and Kline tussled while going down the back steps and the gun again went off, wounding Kline in the back, from which he died. The testimony is uncontradicted that there were no powder burns on the wound and body of R. E. Kline.

In a house nearby, Henry Gibson, an elderly Negro man, and his wife, Inez Gibson, had just gone to bed

when they heard the disturbance and the two shots. Inez Gibson immediately got out of bed and went through the back door barefooted and in her nightgown, and traveled in the direction of the disturbance. Henry Gibson, being much older than his wife and somewhat feeble, did not follow her. Almost immediately after Inez went around the house into the dark, the gun fired a third time.

Appellant admits he shot at Inez Gibson, who was later found dead near the back of his home. He told the sheriff and other officers, as well as a neighbor, that he had killed his wife, stepfather and Inez Gibson. He claimed he killed his wife and R. E. Kline accidently, but that he killed Inez Gibson under the following circumstances: He said he reloaded his gun, after he got rid of Kline, and he began to run away ("trot away") from the scene, and that he suddenly heard a voice out there in the dark saying: "Is that you Henry?" He then stated "Well I just shot not knowing whether I hit Inez or not. I wasn't shooting to hit her. I was just shooting mostly to scare her back because I knew all the time that she had a gun, two guns in her house, you understand." He admitted that he knew the voice was that of his sister-in-law, Inez Gibson.

The issue to be determined here is whether or not three instructions granted to the State of Mississippi are erroneous, and, if so, whether or not they were prejudicial so as to require a reversal of this case. The three instructions complained of by appellant are in the following language:

"The Court further instructs the Jury for the State, that malice aforethought mentioned in the indictment may be presumed from the unlawful and deliberate use of a deadly weapon."

"The Court further instructs the Jury for the State, that the killing with a deadly weapon is assumed to be malicious, and therefore murder, and before the pre-

sumption disappears the facts of the killing must appear in the evidence and must change the character of the killing, either showing justification or necessity, before it is reduced from murder. If the facts relied upon to change such presumption are unreasonable and improbable, or if they are contradicted by physical facts and circumstances in evidence, then the Jury may find a verdict either of murder or manslaughter, according to the circumstances and facts in evidence.''

''The Court further instructs the Jury for the State, that to make a homicide justifiable on the grounds of self-defense, the danger to the slayer must be either actual, present, and urgent, or the slayer must have reasonable grounds to apprehend a design on the part of the Deceased to kill him, or to do him some great bodily harm, and, in addition to this, that there was imminent danger of such design being accomplished; and hence mere fear, apprehension, or belief, however sincerely entertained by one person, that another designs to take his life, or to do him some great bodily harm, will not justify the former in taking the life of the latter party. A party may have an apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final judge; the Jury may determine the reasonableness of the ground upon which he acted.''

·. ■■ ■ The first instruction, stating that malice aforethought may be presumed from the unlawful and deliberate use of a deadly weapon, is the law, and has been approved and may be used in cases where the State is required to establish malice aforethought and where the testimony fails to explain the circumstances surrounding the deliberate use of such weapon. Dickins v. State, 208 Miss. 69, 43 So. 2d 366 (373); Smith v. State, 137 So. 96 (Miss.); Hawthorne v. The State, 58 Miss. 778; Lamar v. The State, 63 Miss. 265; 40 C. J. S., Homicide, Sec. 25, p. 874.

■■ ■ It is erroneous, however, to give this instruction, where it may be misleading under the facts, (as in the case of Gee v. State, 80 Miss. 285, 31 So. 792) or in a case where malice is an essential element of the crime charged, and where all of the facts are known and detailed in evidence. Where presumptions have been swallowed up by a full disclosure of all of the facts and circumstances surrounding the killing, malice should be left for the consideration of the jury as a part of the whole case, and such an instruction should not be granted to the State as an aid to bolster the testimony introduced. McDaniels v. State, 8 S. & M. 401; Lamar v. The State, supra; Hawthorne v. The State, supra; Hansford v. State, 11 So. 106 (Miss.); Brandon v. State, 23 So. 517 (Miss.); Johnson v. State, 223 Miss. 167, 77 So. 2d 824; Cumberland v. State, 110 Miss. 521, 70 So. 695; Batiste v. State, 165 Miss. 161, 147 So. 318; Busby v. State, 177 Miss. 68, 170 So. 140; Walker v. State, 146 Miss. 510, 112 So. 673; Winchester v. State, 163 Miss. 462, 142 So. 454; Bridges v. State, 197 Miss. 527, 19 So. 2d 738; Smith v. State, 137 So. 97 (Miss.); Smith v. State, 205 Miss. 283, 38 So. 2d 725; Tullos v. State, 222 Miss. 90, 75 So. 2d 257; 26 Am. Jur., Sec. 536, p. 528.

■■ ■ The testimony in this case is overwhelming, and it leaves no room to doubt the guilt of appellant. Defendant is indeed fortunate that the jury did not find him guilty of the charge laid against him in the indictment. In the case of Bridges v. State, above cited, this Court said: ''In a case where guilt is less patent such error would require reversal. However, the evidence is overwhelming that the assault was unprovoked and wholly unjustified and no impartial jury with capacity to think and courage to act would reasonably find otherwise.'' Judgment and sentence of the trial court was affirmed.

The second instruction, supra, has been presented by appellant in his brief, in conjunction with the argument with reference to the first instruction. This instruction is patently a copy of the last paragraph in the case of Bennett v. State, 152 Miss. 728, 120 So. 837. The facts in the Bennett case are similar to the case here appealed, except in that case, the appellant killed his wife with an axe. This Court in affirming the Bennett case quoted the language set out in the second instruction. The language used in the Bennett case was quoted in the case of Cockerham v. State, 30 So. 2d 417 (Miss.), and given as a reason for affirming the later case. The granting of this instruction in this case was erroneous for two reasons: The instruction is not full enough, and this instruction like the first should not have been granted after all of the facts surrounding the killing had been introduced in evidence.

This Court has repeatedly pointed out the unwisdom of framing instructions from portions of Supreme Court opinions, taken out of context. Our State has a rich and illustrious history of tried and approved instructions heretofore granted in criminal cases, and the safe way is to follow the beat path of judicial precedents. Alexander's Mississippi Instructions, Sec. 78, Vol. 1, p. 49.

It is apparent, therefore, that the first and second instructions, supra, were erroneously granted, but was this such an error as to require reversel of this case? We think not for the following reasons:

Appellant obtained thirteen instructions, including the eleventh instruction granted in the case of Matthews v. State, 108 Miss. 72, 66 So. 325. The instructions fully informed the jury of all the rights and defenses of appellant under the facts established by the evidence. All of the instructions granted to the State and to appellant in the trial must be read together, and when so read, if they announce correct principles of law, the

error in a particular instruction is considered by this Court to be harmless. Pittman v. State, 147 Miss. 593, 113 So. 348; Slade v. State, 119 So. 355 (Miss.); Temple v. State, 165 Miss. 798, 145 So. 749; Carter v. State, 169 Miss. 285, 152 So. 876; Thomas v. State, 200 Miss. 220, 26 So. 2d 469; Knight v. State, 57 So. 2d 161 (Miss.); Jackson v. State, 218 Miss. 598, 67 So. 2d 520; Durham v. State, 158 Miss. 833, 131 So. 423.

Finally, it becomes apparent that the first two instructions were harmless and not prejudicial, when we remember that the jury did not convict appellant of murder, but of manslaughter, and malice is not an element of the crime of manslaughter. The granting of these instructions had no weight with the jury, and were therefore harmless. See Rogers v. State, 222 Miss. 609, 76 So. 2d 702; 26 Am. Jur., Homicide, Sec. 536, p. 528; Landreth v. State, 201 Indiana 691, 171 N. E. 192, 72 A. L. R. 891.

 █ The third instruction complained of by appellant has been used as a model by the prosecuting attorneys of this State for many years. In the case of Coleman v. State, 22 So. 2d 410 (Miss.), this Court said: "This instruction has been approved in the criminal jurisprudence in this state ever since Wesley v. State, 37 Miss. 327 * * * and as late as Ransom, et al. v. State, 149 Miss. 262, 115 So. 208. This instruction with identical language was approved in the latest case dealing with it, Callas v. State, 151 Miss. 617, 118 So. 447." The instruction was criticized in the case of Bailey v. State, 174 Miss. 453, 165 So. 122; nevertheless the Court finally said: "In our opinion, the instruction is not reversible error * * *". Since the decision by this Court of the Bailey case, supra, this instruction has also been approved and followed in the cases of Dobbs v. State, 200 Miss. 595, 27 So. 2d 551, 29 So. 2d 84, and Holmes v. State, 199 Miss. 137, 24 So. 2d 90.

We find no reversible errors in the record of the trial of this case, and for that reason, the judgment of the lower court is affirmed.

Affirmed.

*Lee, P. J.,* and *Kyle, Ethridge* and *McElroy, JJ.,* concur.